UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAYLYNN MORGAN<br>1967 Pennington Rd.<br>Ewing, NJ 08618 | CIVIL ACTION<br><br>CASE NO.: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SUNRISE LOWER MAKEFIELD PA<br>SENIOR LIVING, LP<br>d/b/a Sunrise Senior Living of<br>Lower Makefield<br>631 Stony Hill Rd.<br>Yardley, PA 19067<br>and<br>MS LOWER MAKEFIELD SH, LLC<br>d/b/a Sunrise Senior Living of<br>Lower Makefield<br>631 Stony Hill Rd.<br>Yardley, PA 19067<br>and<br>SUNRISE SENIOR LIVING<br>SERVICES, INC.<br>7902 Westpark Dr.<br>McLean, Virginia 22102<br>and<br>SUNRISE SENIOR LIVING<br>MANAGEMENT, INC.<br>7902 Westpark Dr.<br>McLean, Virginia 22102 | |
| Defendants. | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Jaylynn Morgan (*hereinafter* referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against Sunrise Lower Makefield PA Senior Living, LP, MS Lower Makefield SH, LLC, Sunrise Senior Living Services, Inc., and Sunrise Senior Living Management, Inc. (*hereinafter* collectively referred to as "Defendants"), and avers as follows:

## INTRODUCTION

1.	Plaintiff initiates the instant action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*)/the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et seq.*), and the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.	This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

3.	This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.	Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants citizens of the Eastern District of Pennsylvania.

5.	Plaintiff is proceeding herein under Title VII/PDA and the ADA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendants Sunrise Lower Makefield PA Senior Living, LP and MS Lower Makefield SH, LLC, upon information and belief, jointly operate as the nursing home facility that Plaintiff physically worked out of in Yardley, Pennsylvania and does business as Sunrise Senior Living of Lower Makefield.

9. Defendants Sunrise Senior Living Services, Inc. and Sunrise Senior Living Management, Inc., upon information and belief, jointly own and manage Defendants Sunrise Lower Makefield PA Senior Living, LP, and MS Lower Makefield SH, LLC.

10. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was hired to work for Defendants on or about July 30, 2018 as a caregiver.

14. During her employment with Defendants, Plaintiff was a dedicated and hard-working employee, who performed her job well.

15. At all relevant times herein, Plaintiff was directly supervised by Taylor Johnson (Reminiscence Coordinator – hereinafter "Johnson") and indirectly supervised by Shawna Garland (Executive Building Director – hereinafter "Garland").

16. In or about the beginning of 2020, Plaintiff notified Defendants' management that she was pregnant.

17. In or about March of 2020, Plaintiff presented Defendants' management with a doctor's note indicating that she needed a light duty accommodation because her doctor was restricting her from lifting over 20 lbs due to her pregnancy.

18. Plaintiff was aware and had observed other employees being accommodated with light duty assignments, particularly when they had suffered a work-related injury.

19. In response to Plaintiff's request for light duty, she was not given a light duty assignment but Respondent did generally accommodated her lifting restrictions by not assigning her to residents who were unable to walk by themselves and by giving her assistance when she was required to lift a resident.

20. In addition to the limitations Plaintiff had as a result of her pregnancy (discussed *supra*), Plaintiff also suffers from asthma and therefore has breathing limitations.

21. Plaintiff has suffered from asthma since childhood and she still carries an inhaler with her.

22. When the COVID-19 pandemic surfaced, Defendants began requiring employees to wear masks – which negatively impacted Plaintiff's breathing (primarily because of her asthma diagnosis).

23. While Defendants wanted their employees to wear N-95 masks, this type of mask made it very difficult for Plaintiff to breath (due to her asthma condition). Therefore, Plaintiff wore a regular surgical mask and requested to take her mask down at times when she experienced difficulty with breathing (as even regular surgical masks made it hard for Plaintiff to breathe).

24. In response to Plaintiff's request to take her mask down at times when she experienced difficulty breathing (discussed *supra*), she was informed by Defendants' Personal Care Coordinator, Molly Eisenberg (hereinafter "Eisenberg") that Garland said she [Plaintiff] could briefly step away and take her mask down to get a "breather."

25. Despite being told by Defendants' management that she could briefly step away and take her mask down to get a "breather" (as a reasonable accommodation for her aforesaid medical condition), Plaintiff was still subjected to harassment an animosity from Defendants' other management, such as Defendants' Maintenance Coordinator, Tom Useller (hereinafter "Useller"), and Johnson.

26. For example:

    i. Plaintiff was subjected to pretextual discipline;

    ii. Useller would consistently complain about Plaintiff having to take her mask down for the reasons discussed above; and

    iii. On June 23, 2020, Johnson attempted to provide Plaintiff with a written counseling for briefly taking her mask down when she was having trouble

breathing and was experiencing an asthma attack (one of the occasions for which Useller complained about).

27. More specifically, on or about June 23, 2020, Johnson brought Plaintiff into his office after having a larger discussion with other employees of Defendants regarding the use of masks while working.

28. While in Johnson's office, Plaintiff informed Johnson that Garland (through Molly) gave Plaintiff permission to briefly take her mask down when she was having difficulty breathing and when she was not around anyone or giving direct care.

29. Johnson ignored Plaintiff's attempt to explain why she needs to take her mask down (and that she had permission to do so) and instead presented her with a written counseling.

30. Johnson instructed Plaintiff that she was required to sign the aforesaid written counseling agreeing that she was instructed to keep her mask on at all times.

31. In response, Plaintiff reiterated to Johnson that she had asthma and was approximately six months pregnant and therefore did not want to sign the counseling form until she spoke with the nurse about her asthma attacks and her doctor (in order to determine if there were any accommodations that could be made), to which Johnson replied that he would call Defendants' nursing office.

32. Melissa Black (hereinafter referred to as "Black") from Defendants' nursing office arrived at Johnson's office and Plaintiff asked to speak with Melissa alone.

33. During her discussion with Melissa on June 23, 2020, Plaintiff broke down in tears and explained to Melissa her current medical conditions (asthma and pregnancy). Plaintiff further told Melissa that wearing a mask sometimes makes it difficult for her to breath and that

she had previously been told by Molly that she could briefly pull it down if she was having trouble breathing.

34. After discussing her situation and current medical conditions with Melissa, Melissa advised that Plaintiff needed to speak with her doctor regarding this matter.

35. When Johnson returned to the office, he continue to push Plaintiff to sign the written counseling (discussed *supra*) and when Plaintiff again expressed hesitation to do so (without speaking to her doctor first), Johnson proceeded to tell Plaintiff, in a hostile manner, that she needed to let him know if she could properly do her job while wearing a mask.

36. At this point Plaintiff became extremely upset and began to cry even worse, at which point Johnson responded by stating that Plaintiff was disrespectful, handed her the aforesaid written counseling, and told her to think about his question (as discussed in Paragraph 35 of the instant Civil Action Complaint).

37. As Johnson continued to push Plaintiff to sign the written discipline, Plaintiff grew more emotional, began to feel ill, and started having trouble breathing. As a result, Plaintiff asked if they could discuss this later, as she could not breathe and needed to go home.

38. Eventually (after continuing to push Plaintiff to her breaking point), Johnson allowed Plaintiff to leave.

39. Plaintiff thereafter spoke with her doctor regarding her restrictions (related to her asthma condition and her pregnancy) and on June 24, 2020, Plaintiff presented Johnson with another doctor's note reiterating that she was to perform no heavy lifting and advising that she could not stand for prolonged periods of time and that she should be permitted to wear a self-tied mask (rather than tighter masks which were triggering her asthma).

40. Johnson took Plaintiff's doctor's note and indicated that he would have to provide it to Garland in order to determine if her note would impact scheduling.

41. That same day (June 24, 2020), Plaintiff was brought into Garland's office for what she thought would be a discussion about her aforesaid June 24th doctor's note. However, when Plaintiff arrived at the office, Garland stated to her that she was not going to discuss her doctor's note because Plaintiff was already informed previously that Defendants did provide light duty.

42. After advising Plaintiff that she was not going to discuss her doctor's note, Garland then proceeded to inform Plaintiff that she was being suspended pending investigation into the incident between her and Johnson on June 23, 2020 and to write a statement about the same (which she did).

43. On or about June 26, 2020, Garland called Plaintiff and told her that she was being terminated from her employment with Defendants because of her non-verbal communication on June 23rd, but never elaborated on what she meant by "non-verbal communication."

44. Plaintiff believes and therefore avers that she was terminated from her employment with Defendants because of her pregnancy, her actual, perceived and/or record of disability, and/or requests for/utilization of reasonable medical accommodations.

**Count I**
**Violations of Title VII/PDA**
**([1] Pregnancy Discrimination; [2] Retaliation; & [3] Hostile Work Environment)**
**-Against All Defendants-**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Defendants are "employer[s]" within the meaning of Title VII/PDA because, at all times relevant herein, Defendants have employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendants.

47. After apprising Defendants' management of her pregnancy, she was subjected to discrimination and a hostile work environment through disparate treatment, discriminatory comments, and demeaning/derogatory treatment because of her pregnancy (discussed *supra*).

48. For example,

   i. Plaintiff was treated in a rude and demeaning manner by Defendants' management;

   ii. Plaintiff was berated to the point she began to cry at work; and

   iii. On the last day of her employment, Plaintiff again requested light duty (due to her increased work restrictions) for which she was denied and told that Defendants did not have light duty. However:

      1. Defendants have placed other employees on light duty assignments, particularly those employees who suffered work-related injuries; and

      2. At one point, Plaintiff was told by Garland that Defendants do not provide light duty to employees unless they are injured on the job.

49. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, discriminated against, suspended, and ultimately terminated from her employment with Defendants because of her pregnancy.

50. These actions as aforesaid constitute violations of Title VII/PDA.

## Count II
### Violations of the Americans With Disabilities Act ("ADA," as amended)
([1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate; [3] Hostile Work Environment; & [4] Retaliation)
-Against All Defendants-

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Defendants are an "employer[s]" within the meaning of ADA because, at all times relevant herein, Defendants have employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendants.

53. As a result of her aforesaid health condition (asthma), Plaintiff requested reasonable medical accommodations.

54. For example, Plaintiff requested to wear a regular surgical mask (instead of an N-95 mask) and to take her mask down at times when she experienced difficulty breathing (as even the regular surgical mask made it hard for Plaintiff to breathe).

55. While Plaintiff was told that both accommodations were granted by Defendants, she was harassed and reprimanded by her direct supervisor for utilizing such accommodations.

56. Therefore, Plaintiff requested, through a doctor's note on June 24, 2020, to wear a self-tied mask (rather than tighter masks which were triggering her asthma).

57. After presenting her aforesaid doctor's note to Defendants' management on June 24, 2020, Plaintiff was suspended and quickly thereafter terminated from her employment with Defendants.

58. Defendants' management did not even attempt to discuss with her the reasonable accommodation request[s] outlined in Plaintiff's June 24, 2020 doctor's note.

59. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, unlawfully reprimanded, and ultimately terminated from her employment with Defendants because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) her request reasonable accommodations – which constitutes unlawful retaliation; and/or (4) because of Defendants' refusal to accommodate her health conditions.

60. These actions as aforesaid constitute violations of the ADAAA

### Count III
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference and Retaliation)

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

63. Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

64. Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment (prior to requesting FMLA leave).

65. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

66. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

67. In or about May/June of 2020, when Plaintiff continued to be harassed about her medical accommodations, Plaintiff inquired on several occasions regarding her rights under the FMLA and informed Defendants' Business Office Coordinator, Liani Torres (hereinafter "Torres"), that she would need to take early FMLA for her pregnancy and aforesaid health conditions if Defendants could not continue to provide her with the reasonable accommodations she had requested.

68. Rather than advising her of her rights to take medical leave under the FMLA, Plaintiff was ignored, dismissed, or given the run around by Torres. Therefore, Plaintiff approached Garland about needing to take and early FMLA leave if Defendants were not going to continue to accommodate her medical conditions.

69. In addition to informing Torres and Garland of her potential need to take early FMLA if Defendants were to stop accommodating her, Plaintiff also apprised Torres and Garland of her intent to take FMLA leave after the birth of her child.

70. Despite apprising Torres and Garland of her potential need for early FMLA leave and her intent to take maternity leave following the birth of her child, Plaintiff was never properly advised of her FMLA rights or provided any FMLA paperwork.

71. Defendants committed interference and retaliation violations of the FMLA by: (1) engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; (2) refusing to notify Plaintiff of her FMLA rights; (3) reprimanding, suspending and ultimately terminating Plaintiff in retaliation for requesting and/or exercising FMLA; (4) considering Plaintiff's FMLA needs when making the decision to discipline, suspend, and/or

terminate Plaintiff; and/or (5) terminating Plaintiff in order to prevent her from utilizing FMLA in the future.

72. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

 Respectfully submitted,

 **KARPF, KARPF, & CERUTTI, P.C.**

 _____
 Ari R. Karpf, Esquire
 3331 Street Road
 Two Greenwood Square
 Suit 128
 Bensalem, PA 19020
 (215) 639-0801

Dated: February 26, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |
|---|---|
| Jaylynn Morgan<br>v.<br>Sunrise Lower Makfield PA Senior Living, et al. | CIVIL ACTION<br><br>NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 2/26/2021 | Attorney-at-law | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 1967 Pennington Road, Ewing, NJ 08618

Address of Defendant: 631 Stony Hill Road, Yardley, PA 19067 / 7902 Westpark Drive, McLean, VA 22102

Place of Accident, Incident or Transaction: Defendants place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/26/2021     _____(signature)_____     ARK2484 / 91538
       *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 2/26/2021     _____(signature)_____     ARK2484 / 91538
       *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
MORGAN, JAYLYNN

**DEFENDANTS**
SUNRISE LOWER MAKEFIELD PA SENIOR LIVING, LP, ET AL.

**(b)** County of Residence of First Listed Plaintiff: Mercer
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- 1  U.S. Government Plaintiff
- 2  U.S. Government Defendant
- X 3  Federal Question *(U.S. Government Not a Party)*
- 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- X 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of Title VII, ADA, FMLA and the Pregnancy Discrimination Act.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*
JUDGE   DOCKET NUMBER

DATE: 2/26/2021
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

Print   Save As...   Reset